UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
TECHNAORO INC.,                                              :
:
                  Plaintiff,                                 :
:                              05 Civ. 9216 (GEL)
         -v-                                                 :
:                              **OPINION AND ORDER**
UNITED STATES FIDELITY & GUARANTY              :
COMPANY,                                                     :
:
                  Defendant.                                 :
:
------------------------------------------------------------x

Noel W. Hauser, Noel W. Hauser and Associates,
New York, NY, <u>for plaintiff</u>.

Robert J. Tracy, Clifton Budd & DeMaria, New
York, NY, <u>for defendant</u>.

GERARD E. LYNCH, <u>District Judge</u>:

      Plaintiff Technaoro, Inc., brings this action seeking a declaration that defendant United States Fidelity & Guaranty Company is required to defend it in an underlying civil action initiated against plaintiff and others by Cartier, a division of Richemont North America Inc., and Cartier International B.V. (collectively "Cartier"). <u>See</u> Compl., <u>Cartier v. Technaoro, Inc.</u>, No. 05 Civ. 6614 (S.D.N.Y. July 22, 2006) (Fitzgerald Aff. Ex. B) (the "Cartier Complaint"). Defendant now moves for summary judgment, arguing that the allegations in the Cartier Complaint do not trigger a duty to defend, and that plaintiff failed to comply with notice requirements in the insurance policies at issue. Plaintiff, in turn, cross-moves for summary judgment. Defendant's motion will be granted, plaintiff's motion will be denied, and the case will be dismissed with prejudice.

## BACKGROUND

This insurance action arises from an underlying civil action brought by Cartier, alleging that plaintiff improperly copied and used Cartier's designs for three kinds of watches, as well as jewelry designs known as Le Baiser du Dragon ("the Kiss of the Dragon"), the Screw Head bracelet design, and the Screw Head jewelry motif.  See Cartier Compl. passim.

On July 29, 2005, plaintiff forwarded the Cartier Complaint and accompanying summons to defendant and requested that defendant defend it in that action.  (Hauser Aff. ¶4.)  On Oct. 31, 2005, plaintiff filed this action against defendant, claiming that defendant was obligated to assume its defense under three insurances policies issued to plaintiff by defendant.  The policies were effective from June 9, 2003, until June 9, 2004, from June 9, 2004, to June 9, 2005, and from June 9, 2005, to June 9, 2006.

The 2003-2004 policy covers "'[a]dvertising injury' caused by an offense committed in the course of advertising your goods, products or services that . . . was committed during the policy period" (Fitzgerald Aff. Ex. A at D0014), and the later policies limit their coverage in essentially the same fashion.[1]  The 2003-2004 policy defines "advertising injury" as follows:

> "Advertising injury" means injury arising out of one or more of the following offenses:
>
> a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

---

[1] The 2004-2005 and 2005-2006 policies cover "'[a]dvertising injury' . . . arising out of the "advertising" of your goods, products or services; and . . . caused by an offense committed . . . during the period that this 'advertising injury' coverage is in effect." (Fitzgerald Aff. Ex. A at D0021.)

>  b.  Oral or written publication of material that violates a person's right to privacy;
>
>  c.  The use of another's advertising idea in your "advertising";
>
>  d.  Infringement of another's copyright, trade dress or slogan in your "advertising".

(Id. at D0012.)   The language of sub-part (d), the provision at issue in this case, is the same in the later policies.[2]  As to the meaning of the word "advertising," the 2003-2004 policy defines it as "attracting the attention of others by any means for the purpose of seeking customers or supporters or increasing sales or business" (id. at D0012), and again the later policies contain substantially identical language.[3]

The policies also set forth a requirement that the insured give notice to the insurer when a claim has been made against it, or when an event occurs that might give rise to a claim.  The 2003-2004 policy states as follows:

>  2.  Duties in the Event of . . . Offense, Claim or "Suit"
>
>  a.  You must see to it that we are notified as soon as practicable of an . . . offense which may result in a claim.  Notice should include:
>
>  (1)  How, when and where the . . . offense took place;
>
>  (2)  The names and addresses of any injured persons and witnesses; and

---

[2] The later policies similarly define "advertising injury" to include "injury . . . caused by . . . [i]nfringement upon another person's or organization's copyright, trade dress or 'slogan' in your 'advertising.'" (Fitzgerald Aff. Ex. A at D0026.)

[3] Similarly, the later policies define "advertising" as "attracting the attention of other persons or organizations by any means for the purpose of seeking customers or supporters and increasing sales or business." (Fitzgerald Aff. Ex. A at D0025.)

>> (3) The nature and location of any injury or damage arising out of the . . . offense.
>
> b. If a claim is made or "suit" is brought against any insured, you must
>
>> (1) Immediately record the specifics of the claim or "suit" and the date received, and
>>
>> (2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> c. You and any other involved insured must
>
>> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit."

(Fitzgerald Aff. Ex. A at D0010-11.) The later policies similarly require that the insured "notify us as soon as reasonably possible if there is an . . . 'advertising injury' offense that may result in damages . . . even if no demand has been made against you or any insured," and contain a similar list of specific documents and information that must be provided. (Id. at D0018.)

## DISCUSSION

**I.   Standards for Summary Judgment and the Duty to Defend**

Summary judgment is appropriate where the record shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006).

"[T]he duty to defend is broader than the duty to indemnify." Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 98 N.Y.2d 435, 443 (2002), quoting Fitzpatrick v. Am. Honda Motor Co., 78 N.Y.2d 61, 65 (1991). "[A]n insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable

possibility of recovery under the policy." Fitzpatrick, 78 N.Y.2d at 65. "The duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer . . . [even if] the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions." Seaboard Sur. Co. v Gillette Co., 64 N.Y.2d 304, 310 (1984) (citations omitted).

"When an exclusion clause is relied upon to deny coverage, the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." Town of Massena, 98 N.Y.2d at 444. The right to a defense "exists even if debatable theories are alleged in the pleading against the insured." Int'l Paper Co. v Cont'l Cas. Co., 35 N.Y.2d 322, 325 (1974). On the other hand, "if the allegations of the underlying complaint allow for no interpretation that will bring them within the policy provisions, there is no duty to defend." Nancie D. v. N.Y. Cent. Mut. Fire Ins. Co., 195 A.D.2d 535, 536 (2d Dep't 1993). "[A]n insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." Allstate Ins. Co. v. Zuk, 78 N.Y.2d 41, 45 (1991).

## II. Advertising Injury

Defendant first argues that it has no duty to defend because the allegations in the Cartier Complaint do not involve any offense committed in the course of advertising defendant's goods. (D. Mem. at 13.) The insurance policies at issue provided coverage only for "[a]dvertising injury caused by an offense committed in the course of 'advertising' your goods, products or services." (Fitzgerald Aff. Ex. A at D00013-14, 21.) The Cartier Complaint, defendant points out, deals principally with the improper use of jewelry and watch designs, not with advertising.

The policies at issue define "[a]dvertising injury" to include "[i]nfringement of another's copyright, trade dress or slogan in your 'advertising.'"  (Id. at D0012).  The Cartier Complaint does allege trade dress and copyright infringement, but nowhere in those counts is there an allusion to advertising.  (Fitzgerald Aff. Ex. B ¶¶ 61-67, 80-82, 86-88.)   In fact, the only allegation that relates to advertising in the six counts of the Cartier Complaint is a single reference to plaintiff's "promotion" of allegedly infringing jewelry items in Count III, which pertains to trademark infringement. (Id. ¶ 76.)  The other counts of the Cartier Complaint arise from alleged misappropriation of jewelry and watch designs, and make no mention of advertising or promotion.  (Id. ¶¶ 61-88.)

This may seem a tenuous basis on which to hold that defendant has a duty to defend.  Our Court of Appeals, however, considered an insurance policy similar to the policies at issue in this case in Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79 (2d Cir. 2006), and concluded that it did give rise to a duty to defend a similar underlying action.  The policy in Century 21 was limited to "advertising injury," defined in language virtually identical to the language of the policy at issue in this case:

> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> b. Oral or written publication of material that violates a person's right of privacy;
>
> c. Misappropriation of advertising ideas or style of doing business; or
>
> d. Infringement of copyright, title or slogan.

Century 21, 442 F.3d at 80-81.  The underlying allegations were that the insured had

6

> *marketed*, distributed and sold goods in connection with a
> colorable imitation and simulation of the Gucci Trademarks with
> the express intent of causing confusion and mistake, of deceiving
> and misleading the purchasing public to buy and otherwise trade in
> its products in the erroneous belief that they were relying upon the
> reputation of plaintiff Gucci; and in so doing, the defendant
> improperly appropriated the valuable trademark of plaintiff Gucci.

Id. at 81 (emphasis added).  These allegations arise no more directly from advertising activities than the relevant allegations in this case:

> Defendants' manufacture, *promotion* or sale of jewelry items in
> connection with the PANTHERE mark or a colorable imitation
> thereof creates a likelihood of confusion such that the purchasing
> public is likely to believe that Defendants' jewelry items are
> Cartier items or are in some manner sponsored, approved or
> authorized by, or otherwise connected with Cartier.

(Fitzgerald Aff. Ex. B ¶ 76; emphasis added.)

In Century 21, the Court of Appeals concluded that the allegation that the insured had infringed the underlying plaintiff's rights by "marketing" made it impossible to conclude from the face of the complaint that the alleged injury was not a covered, advertising injury:

> Although 'marketing' may refer simply to selling, effective selling
> often involves extensive promotional activities, and when they
> occur they are all part of the 'marketing.'  The relevant question is
> not whether 'marketing' may refer to something other than
> 'advertising'; rather it is whether Gucci's use of the term suggests
> any possible factual or legal basis upon which Diamond could be
> obligated to indemnify Century under any provision of the policy.

442 F.3d at 83 (citations and some internal quotation marks omitted).

Although the underlying complaint in Century 21 used the word "marketing" while the Cartier complaint uses the word "promotion," there is no meaningful difference in the scope of activities encompassed by the two words; like the allegations in Century 21, the allegations of the Cartier Complaint could be read to arise from activity that falls within the scope of

7

"advertising" as defined in defendant's policies.[4]  As defendant correctly notes, the policies issued by defendant do not mention trademark infringement, which is the only context in which the word "promotion" is mentioned in the Cartier Complaint.  But the same was true in Century 21, in which the policy at issue covered allegations of "[i]nfringement of copyright, title or slogan" and the allegation was that the insured had "improperly appropriated the valuable trademark" of the plaintiff in the underlying action.  442 F.3d at 81.

Moreover, the prayer for relief in the Cartier Complaint asks for the destruction of all materials "displaying or promoting the goods which were or are being advertised, promoted, offered for sale or sold in connection with" the improperly used designs.  (Fitzgerald Aff. Ex. B at 25.  This and the Cartier's Complaint's other reference to promotion suggest a "possible factual or legal basis upon which [defendant] could be obligated to indemnify" plaintiff under the policies at issue.  Century 21, 442 F.3d at 83.  Thus, Century 21 clearly establishes that the duty to defend applies.

**III.   Notice**

Defendant's second argument concerns the insured's obligation to give notice to the insurer when a claim has been made against it.  As discussed above, the policies at issue require that the insured notify the insurer "as soon as practicable" (Fitzgerald Aff. Ex. A at D0010) or "as soon as reasonably possible" (id. at D0018) if there is any offense that might result in damages, "even if no demand has been made against you or any insured." (Id).

---

[4] Indeed, as quoted above, the Second Circuit in Century 21 based its holding in part on its observation that "marketing" — or even simply "selling" — products "often involves extensive *promotional* activities," 442 F.3d at 83, quoting Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187 (1995) (emphasis added).  The Court thus explicitly equated "marketing" and "promotion" as activities that could encompass advertising injury.

Plaintiff acknowledges that it first gave defendant notice of the Cartier claims against it in a letter dated July 29, 2005, which forwarded the Cartier Complaint as filed. (P. Mem. at 8.) Several months earlier, however, plaintiff had received from Cartier a letter dated February 11, 2005, in which Cartier accused plaintiff of "violat[ing] Cartier's design patents and infring[ing] its federal registration for these products." (Tracy Aff. Ex. G at 2.) Cartier demanded that plaintiff "immediately discontinue the advertising, promotion and sale of any merchandise incorporating the Cartier Trade Dress, and that all advertising, including internet advertising, containing the Cartier Trade Dress be withdrawn." (Id.) In a second letter, dated February 15, 2005, Cartier renewed its demand that plaintiff cease the allegedly infringing activity, and attached a draft complaint. (Tracy Aff. Ex. H.) In short, although plaintiff was on notice in February 2005 of a potential "'advertising injury' offense that may result in damages" (Fitzgerald Aff. Ex. A at D0018), plaintiff failed to give the notice required under the policies until July 2005. The notice requirement was one of the "conditions" of coverage under the policies at issue. (See id. at D0010, D0023.)

Under New York law, an unexcused failure to satisfy a notice requirement frees an insurer from its duty to defend. See Deso v. London & Lancashire Ind. Co., 3 N.Y. 2d 127, 129 (1957). An insurer may disclaim coverage pursuant to a valid notice provision without showing prejudice. Security Mut. Ins. Co. of N. Y. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 439 (1972). Although "[g]enerally, the question of whether a delay is excusable is a question of fact for the jury, . . . of course a delay may be unreasonable as a matter of law." Olin Corp. v. Ins. Co. of N. Am., 966 F.2d 718, 724 (2d Cir. 1992) (interpreting New York law). New York cases have held that delays shorter than five months are long enough as a matter of law to support a

disclaimer of coverage when there is no explanation offered for the delay.  See, e.g., Deso, 3 N.Y.2d at 130 (in absence of valid explanation or excuse, 51-day delay unreasonable as matter of law); Gershow Recycling Corp. v. Transcont'l Ins. Co., 22 A.D.3d 460, 461 (2d Dep't 2005) (holding that a "five-month delay was unreasonable as a matter of law and justified the defendant's disclaimer").

Plaintiff does not dispute that it first notified defendant of the claim in July 2005, despite having known of the claim itself in February; nor does it argue that this delay is insufficient to support a disclaimer of liability under New York law.  Instead, plaintiff offers two arguments to excuse the failure to give notice.  First, plaintiff argues that defendant waived its right to disclaim coverage for lack of timely notice by failing to disclaim coverage in a timely fashion. (P. Mem. at 9.)  Although plaintiff provided the Cartier Complaint and accompanying summons to defendant on July 29, 2005, defendant disclaimed coverage only in its Answer, filed December 27, 2005.

Defendant contends that even if its right to disclaim coverage could be waived, its delay was reasonable.  Defendant asserts that it first learned of the existence of the Cartier Complaint on November 14, 2005, when plaintiff served on defendant a copy of the draft complaint it had received in February 2005.  (D. Reply at 8.)  Moreover, defendant offers an affidavit from Daria Fitzgerald, an employee of defendant's parent company who was responsible for responding to claims on behalf of defendant, in which Ms. Fitzgerald states, "Had I been aware of the February 2005 [*sic*] when the filed complaint was received in August 2005, I would have denied coverage on late notice grounds as well."  (Fitzgerald Aff. ¶21.)

Although it is undisputed that before July 2005, defendant was unaware that plaintiff had received a draft version of the Cartier Complaint in February 2005, it is clear as well that defendant was on notice that plaintiff had not complied with the policies' notice requirement before November.  The Cartier Complaint itself, which was given to defendant in July 2005, alleges that "[i]n February 2005, counsel for Cartier wrote to the Defendants and demanded that they cease and desist the infringement of Cartier's intellectual property rights and their acts of unfair competition."  (Fitzgerald Aff. Ex. B ¶60.)  The notice provisions of the policies at issue require that defendant be informed as soon as possible of any demand made against the insured, or indeed of any occurrence or offense that might result in damages, even if no demand is made.  (Fitzgerald Aff. Ex. A at D0023.)  Thus, defendant was given all the information it needed to realize it could disclaim coverage in July 2005.  Defendant nonetheless failed to disclaim coverage until December 12, 2005, almost five months later, and plaintiff contends that New York case law holds that an insurer's failure to disclaim coverage promptly waives a failure of required notice by the insured.

However, the cases cited by plaintiff in support of the proposition that a defendant's delay waives the right to disclaim are based on a specific statutory provision applicable only to death or bodily injury arising from a motor vehicle accident.  See N.Y. Ins. Law § 3420(d) (formerly § 167(8))[5]; Hartford Ins. Co. v. Nassau County, 46 N.Y.2d 1028, 1029 (1979); Fairmont Funding, Ltd. v. Utica Mut. Ins. Co., 264 A.D.2d 581, 581 (1st Dep't. 1999)

---

[5] "If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant."  N.Y. Ins. Law § 3420(d).

("Insurance Law § 3420(d) is inapplicable to insurance claims not based on 'death or bodily injury'"). Where this statute does not apply, New York courts adhere to the common-law rule that "delay in giving notice of disclaimer of coverage, even if unreasonable, will not estop the insurer to disclaim unless the insured has suffered prejudice from the delay." Fairmont Funding, 264 A.D.2d at 581-82, citing O'Dowd v. American Sur. Co., 3 N.Y.2d 347, 355 (1957).

Plaintiff has raised no genuine issue of material fact regarding whether it was prejudiced by defendant's delay in disclaiming coverage. Plaintiff's counter-statement of material facts does not even allege any prejudice whatsoever from this delay.[6] Because plaintiff asserts no prejudice arising from defendant's delay in disclaiming coverage, plaintiff's failure to provide notice of the claims against it, which was apparent from the face of the Cartier Complaint in July 2005, relieves defendant of its duty to defend.

Second, plaintiff argues that it cannot be held responsible for late notice because, prior to the issuance of the Second Circuit opinion in Century 21 on March 21, 2006, it reasonably believed it was not entitled to coverage because the Cartier Complaint appeared not to state a claim for "advertising injury" under pre-Century 21 precedents. (P. Mem. at 10.) See Great Canal Realty v. Seneca Ins. Co., 5 N.Y.3d 742, 743 (2005) ("there may be circumstances that

---

[6] In fact, plaintiff does not properly state any facts at all, as plaintiff's submission contains neither the citations to admissible evidence nor the specifically enumerated responses to defendant's statement of material facts required by Local Rule 56.1. Plaintiff's submission is titled a "Statement of Material Facts Pursuant to Local Rule 7.1(a)(3)." This Court has no Local Rule 7.1(a)(3). The Northern District of New York does, but plaintiff has not complied with that rule either. Both rules require that papers in opposition to summary judgment must include a numbered paragraph to match each numbered paragraph in the movant's statement of material facts, and that each statement by either party must be followed by a citation to admissible evidence. See S.D.N.Y. Local Rule 56.1; N.D.N.Y. Local Rule 7.1(a)(3); see also Fed. R. Civ. P. 56(e).

excuse a failure to give timely notice, such as where the insured has a good-faith belief of nonliability, provided that belief is reasonable.") (quotation marks and citation omitted). However, plaintiff's reliance on Century 21 is an after-the-fact rationalization: As plaintiff notified defendant of the possible claim in July 2005, and filed its complaint alleging liability under the policies in October 2005, both well before the issuance of the Century 21 decision, plaintiff plainly did not have a "good-faith belief of nonliability" prior to Century 21.[7]

Plaintiff has failed to offer any reason why its failure to give prompt notice should be excused, and defendant may not be held liable under the policies. Plaintiff's failure to comply with the notice provisions of the policies at issue relieves defendant of its duty to defend.[8]

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Doc. #10) is granted, and plaintiff's cross-motion for summary judgment (Doc. #23) is denied. This case is dismissed with prejudice.

---

[7] The cases cited by the parties on the issue of belief in nonliability as an excuse for delay deal chiefly with fact-patterns where the belief in nonliability arises from facts that are unknown to the insured, e.g., lack of knowledge that an accident has occurred. See, e.g., Sec. Mut. Ins. Co. of N.Y., 31 N.Y.2d at 443 (holding that a delay could not be excused on the basis of lack of knowledge or belief in nonliability because "the insureds failed to exercise reasonable care and diligence in ascertaining the facts about the alleged accident and in evaluating their potential liability"). These cases deal with mistakes of fact that create a belief in the *insured*'s nonliability, rather than mistakes of law that create a belief in the *insurer*'s nonliability. Because it is clear that plaintiff had no good-faith belief in the insurer's nonliability prior to Century 21, it is not necessary to analyze the extent to which the same rules apply in this context, or to determine whether Century 21 was really so dramatic a change in the law that plaintiff could not have foreseen it.

[8] Because plaintiff's failure to give notice relieves defendant of the duty to defend, there is no need to consider defendant's argument that all of the allegations in the Cartier Complaint are excluded from coverage because they all involve material published before the policies issued by defendant took effect. (D. Mem. at 19-22.)

SO ORDERED.

Dated: New York, New York
       November 7, 2006

                                                                                        GERARD E. LYNCH
                                                                                     United States District Judge